### ALEXANDER SNOWMAN *vs.* JACKSON HARFORD.

One who purchases real estate while a bill in equity is pending in relation to the title thereto, is bound by the decree which may be made against the party from whom he takes his title, although the purchaser is not a party to the bill.

The fact that the respondent, during the pendency of a bill to compel specific performance of his contract for the conveyance of land had, in pursuance of a subsequent contract, conveyed the premises to a third person, creates, in equity, no inability, and affords no excuse for refusing to obey the decree requiring a conveyance to the complainant.

Nor does it make any difference that the respondent had contracted to make the conveyance to such third person before the commencement of the complainant's bill to compel performance of the prior contract with him.

Where, by the terms of the decree, the complainant is entitled to a clear conveyance from the respondent, a deed of the premises executed by the latter, recit-

ing that " having conveyed said land " to a third person named, " I now make this conveyance by order of said court, in order to purge myself of contempt in not conveying said land according to said order of said court," is not sufficient to purge the respondent of contempt.

A tardy and reluctant compliance with the decree after the issuing and service of a writ of attachment for refusing to obey the decree, does not purge the contempt.

An attachment against a party respondent in a bill in equity for not obeying a decree of the court, is not an appeal purely to the discretion of the judge before whom it is heard.

In such a process, where the facts upon which the rulings were predicated are not in dispute, and are stated as the ground of the rulings, it is proper for the presiding judge to allow exceptions in order to present the case to the full court for revision; and if the rulings are found incorrect, they may be set aside.

On EXCEPTIONS.

ATTACHMENT FOR CONTEMPT, issued by an order of court of Nov. 24, 1868, returnable to the December term following, for not obeying a decree of the court entered up at the August term, 1868.

The defendant filed an answer asserting that he was not " in contempt of court in refusing to convey, to said Snowman, the land described in plaintiff's bill, because, he says, at the time of issuing said decree, it was not in his power to convey said lands; that after the expiration of the time limited in his said bond to plaintiff, to wit, March 18, 1867, he became bound and obliged to convey the same to one Benjamin Saddler, on his complying with certain conditions, which he did; and afterwards, viz., Dec. 6, 1867, he conveyed the said premises to said Saddler, and before the making of said decree.  That he never was notified or forbidden by the court, or by its authority, or by said plaintiff, from conveying said land to any person other than said complainant; and he is willing now to convey, except he is forbidden by law to convey property of which he is not the owner."

The remaining essential facts appear in the opinion, and in 55 Maine, 197, where the original case is reported.

*F. Adams*, for the plaintiff.

*Tallman & Larrabee*, for the defendant.

BARROWS, J.   Snowman had a decree from this court, sitting in equity, against Harford, requiring the defendant "forthwith and upon reasonable request of the said Alexander Snowman, by a good and sufficient deed, to that end by him to be executed in due form and manner, with the lawful revenue stamp affixed, to convey to the said Alexander Snowman the premises described in the plaintiff's bill of complaint, in fee-simple, clear of all incumbrances," and for the payment of costs.   (See case reported in 55 Maine, 197.)

While the bill in equity, praying for a specific performance of Harford's contract to convey to the plaintiff, and for an injunction against other conveyance and incumbrance, was pending, the defendant conveyed the premises, December 6, 1867, to one Saddler. The decree requiring him to convey to plaintiff was entered up at the August term, 1868, and shortly after Snowman requested a conveyance in compliance with it, which the defendant refused to make. Hereupon Snowman filed his rule setting forth the facts and praying for a writ of attachment against the defendant, as in contempt. Upon this rule, due notice being given and no response made, a writ of attachment issued returnable at the December term, 1868. Then the defendant appears and files his answer, alleging that he is not in contempt in refusing to convey to Snowman, because, he says, it was not in his power so to do at the time of the issuing of the decree.   And thereupon he sets forth his agreement with and conveyance to Saddler before the making of the decree, and says he never was enjoined against making such conveyance, "and is willing now to convey, except that he is forbidden by law to convey property of which he is not the owner."

With this answer he filed a deed to Snowman, containing the following recital :  "Having conveyed said land to Benjamin Saddler, Dec. 6, 1867, I now make this conveyance by order of said court in order to purge myself from contempt in not conveying said land according to said order of said court."

The exceptions state that "the presiding judge held, that inasmuch as it was shown that defendant had contracted and conveyed the land as alleged in his answer, the deed tendered and filed is suf-

ficient to purge himself of contempt in the premises, and he over-ruled the motion of the plaintiff, that defendant be required to give a deed without a recital of the alleged conveyance to Saddler." The plaintiff filed exceptions to these rulings. The position now taken by the defendant is, that this process is an appeal purely to the discretion of the judge before whom it is heard, and that exceptions do not lie to correct any errors into which he may have fallen.

We do not think this position can be maintained. The facts upon which the rulings were predicated are not in dispute. They are stated as the ground of the rulings. The exceptions were rightfully and properly allowed by the judge presiding at the term, in order to present the case to the full court for revision; and if the rulings are found incorrect, they may be set aside.

The defendant, in his answer, claimed that he was unable to comply with the decree of the court. But he showed no such inability. The fact, that he had conveyed the premises to Saddler during the pendency of the plaintiff's bill in equity, created no such inability. Perhaps he thought it did, but his ignorance of the law was no excuse for his disobedience to the decree of the court.

It has often been held, and for good reasons, that one who purchases, *pendente lite*, is bound by the decree which may be made against the party from whom he takes his title. *Sorrell* v. *Carpenter*, 2 Peere Williams, 482. *Garth* v. *Ward*, 2 Atk. 175. *Mead* v. *Lord Orrery*, 3 Atk. 242. *Gaskell* v. *Durdin*, 2 Ball & Beattie, 169; and that he need not be made a party to the suit in order to be so bound. *Bishop of Winchester* v. *Paine*, 11 Vesey, 197. *Metcalf* v. *Pulvertoft*, 2 Vesey & Beames, 205.

An examination of these cases will show, that although the rule may sometimes operate to the prejudice of an innocent purchaser, without actual notice, it is firmly adhered to; and it is based upon strong grounds of public policy and general equity; for, but for its adoption, the whole object of an expensive piece of litigation might be defeated by alienations made while it was pending, and there would be no end of controversies. The conveyance to Saddler, then, *pendente lite*, was entirely void of effect upon the rights and

duties of these parties, and was, in fact, no excuse for the defendant's refusal to obey the decree of the court.

Neither does it make any difference that the defendant had contracted to make the conveyance to Saddler before the commencement of the plaintiff's process. Long before that he had made a contract to convey to the plaintiff, which contract the court, upon a full hearing, have held him bound in equity to fulfill. He could not subsequently make any effectual agreement in violation of the plaintiff's rights; and Saddler's remedy, if the bargain was made on Saddler's part in good faith, must be by suit against the defendant for the breach of a contract which he could not make good.

Doubtless these views, and the idea that the plaintiff's rights would not ultimately seriously suffer from the defendant's contumacy, induced the learned and kindly judge, who heard this case at *nisi prius*, to dismiss it thus lightly, with the rulings of which the plaintiff here complains.

But this proceeding was partly for the purpose of ascertaining whether the defendant had been guilty of contempt in refusing to conform to the decree of the court. He admits the refusal; he undertakes to justify it; he declares, in his answer, "that he is forbidden by law to convey property of which he is not the owner." He thus sets up an excuse which is found to have no validity.

It was erroneous to hold that his tardy and reluctant compliance, even had it been in all respects, except in point of time, unexceptionable, purged the contempt of which he was guilty in refusing to obey the decree. If it was purely a sin of ignorance, it need not be heavily visited; but he should, at all events, have been required to pay the cost which the plaintiff had been put to in order to compel an obedience which ought to have been unhesitatingly rendered. We apprehend that if contempts should be held to be thus easily purged, without expense to the guilty party, few decrees in equity would be obeyed except under the pressure of a writ of attachment.

Moreover, the plaintiff was entitled to a clear conveyance according to the terms of the decree, unaccompanied by any impertinent recital of a previous conveyance by his grantor, which (abortive as

it was), in the minds of many, might operate as a cloud upon his title, and thereby put him to trouble and expense to clear it up.  The defendant came into court tendering with one hand what he claims is a compliance with the decree of the court, and placing on record with the other, an averment of his inability to comply, by reason of a previous conveyance, a recital of which he incorporates into the deed so tardily presented.  The natural and inevitable tendency of such a course would be to induce Saddler to attempt a denial of the plaintiff's rights, and to put the plaintiff to further expense in establishing them.

The plaintiff was under no obligation to accept a deed containing this irrelevant and obnoxious matter, and his motion, that the defendant should be required to give a deed without a recital of the alleged conveyance to Saddler, should have been sustained.

Such a deed the defendant must now give, and pay the costs which have been incurred by reason of his failure, without excuse, to obey the decree of the court.          *Exceptions sustained.*

APPLETON, C. J.; WALTON, DICKERSON, and DANFORTH, JJ., concurred.

TAPLEY, J., dissented.