## KATRINA NERLUND AND ANOTHER v. CARLO R. SCHIAVONE AND ANOTHER.

84 N. W. (2d) 61.

June 28, 1957—No. 37,083.

*Meagher, Geer, Markham & Anderson, David W. Nord* and *O. C. Adamson II,* for appellant.

*Russell H. Larson,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the district court denying a motion of third-party defendant, McGowan Agency, for dismissal of the action against it for lack of jurisdiction.

The facts are not seriously in dispute. On August 22, 1955, a collision occurred between an automobile owned and driven by defendant Carlo R. Schiavone and one owned and driven by plaintiff Alfred J. Nerlund. Katrina Nerlund was a passenger in the latter car, and she and Alfred sued Schiavone and his employer, Roy Bazinet, to recover for injuries alleged to have been sustained in that collision. By leave of court, Schiavone joined Underwriters at Lloyd's London, British Commercial Insurance Company, Fred H. Barney, and McGowan Agency, claiming that in various ways not material here they had breached a

duty to provide him with insurance.

McGowan Agency is a trade name used by a partnership composed of Gilbert James McGowan and John Hunter McGowan. These partners are licensed insurance agents and brokers in the State of Illinois but not in the State of Minnesota. They have no office in Minnesota, nor do they employ agents here or solicit business here. The agency has never qualified as an insurance agent in Minnesota and has not filed any consent to the appointment of the commissioner of insurance as its agent for the service of process.

Fred H. Barney, who does business as Barney & Barney at Minneapolis, is a licensed insurance agent in Minnesota. He is an agent for a number of companies and, as such, is authorized to commit some of them to insurance risks.

Roy Bazinet is the owner of a carnival which travels about the country and owns, in connection therewith, a number of motor vehicles. Prior to 1953, Barney had written fire insurance on homes and automobiles of Bazinet and his predecessor, Richard Raney. In the spring of 1953, Barney approached Bazinet about writing liability insurance on some of the vehicles used in his carnival business as well.[1] Bazinet told Barney to go ahead and see if he could place the insurance. Barney first tried to place the risk with United States Fidelity & Guaranty Insurance Company, which he represented, but they refused to write the insurance. He then contacted acquaintances in the insurance business, who likewise declined to accept the risk, but these acquaintances referred him to the McGowan Agency in Chicago. That is the first time Barney knew anything of McGowan Agency. After some negotiation, the insurance was written by McGowan Agency with Underwriters at Lloyd's London.

In 1954, at the suggestion of Bazinet, Barney solicited the insurance of Schiavone, who was employed by Bazinet and owned a motor vehicle used in connection with such employment. Schiavone stated in his affidavit that Barney held himself out as the authorized agent of Mc-

---

[1] In an affidavit by Bazinet used on the motion to dismiss, he stated that Barney represented himself as being the agent of McGowan Agency. This is denied by Barney, and the evidence is conclusive that at that time Barney knew nothing of the McGowan Agency.

Gowan Agency, but Barney denies this. In any event, the insurance was written by the McGowan Agency on Schiavone's vehicle. Insurance on the trucks of two other individuals connected with the carnival company of Bazinet was written, also at the request of Barney.

McGowan Agency had no direct dealings with Schiavone, Bazinet, or the two others they covered by insurance. Premiums on the policies were paid to Barney and forwarded by him to McGowan Agency. McGowan Agency wrote a total of 14 policies of insurance in the State of Minnesota, all of which were on vehicles of the four individuals mentioned above with the exception of one policy written at the request of of a St. Paul broker.

Service of the third-party summons and complaint upon McGowan Agency was attempted in three different ways. On January 13, 1956, a copy of the court's order, summons, and complaint was left with the state insurance commissioner. On January 16, 1956, a copy thereof was left with Fred Barney "as agent" for McGowan Agency. On March 9, 1956, copies of the same papers were served on the secretary of state and mailed to McGowan Agency at Chicago.

Two questions are presented for our determination: (1) Was McGowan Agency amenable to suit in the State of Minnesota? (2) Was jurisdiction acquired over McGowan Agency through any one of the three attempted services of process?

■ It is elementary that two requirements must be met before a court may entertain jurisdiction over a foreign defendant in personam. First, the court must have power to subject the defendant to the jurisdiction of the court, and, second, the defendant must effectively be brought before the court by proper notice.[2]

■ Inasmuch as these questions involve due process under the Federal Constitution, the applicable rules must be found in the decisions of the United States Supreme Court.[3]

---

[2]Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc. (4 Cir.) 239 F. (2d) 502.

[3]Dahl v. Collette, 202 Minn. 544, 279 N. W. 561; Schilling v. Roux Distributing Co. Inc. 240 Minn. 71, 59 N. W. (2d) 907; International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, 161 A. L. R. 1057.

■ A determination of when a foreign defendant is amenable to suit in this state involves a problem that is not always easy of solution. At least up to the present time, no hard-and-fast rule has been evolved which will fit all cases. Certain elementary rules must be observed, but, beyond that, each case must be determined on its own facts.[4] We have recently had occasion to consider this subject in Schilling v. Roux Distributing Co. Inc. 240 Minn. 71, 59 N. W. (2d) 907.[5] The more recent test, as announced by the United States Supreme Court, is whether a foreign defendant has such minimal contacts with the state where the suit is brought as to make it reasonable, in the context of our federal system of government, that it be required to defend the particular suit which is brought in this state.[6]

■ While this test still leaves much to be desired, the facts of each case must be examined with the end in view of determining whether the company actually is engaged in business here to such an extent that it ought reasonably to be held to be subject to suit here.[7] Where its dealings in the state are casual, sporadic, or merely isolated transactions of a rather insignificant nature and do not evince an intent of doing a regular and systematic business here, it cannot be held that the minimal requirements of applicable rules have been met.[8]

■ Here, McGowan Agency had no office in Minnesota; it employed no salesmen here to solicit business; it did not qualify to do business as agent or broker; no one here could bind it or the companies it represented to insurance risks; and its sole contact with the state was that it

---

[4]See, Annotation, 94 L. ed. 1181.

[5]See, also, Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804.

[6]International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, 161 A. L. R. 1057; Travelers Health Assn. v. Virginia, 339 U. S. 643, 70 S. Ct. 927, 94 L. ed. 1154; Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc. (4 Cir.) 239 F. (2d) 502; Annotation, 94 L. ed. 1167.

[7]Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc. (4 Cir.) 239 F. (2d) 502.

[8]Pierce v. Grand Army of the Republic, 220 Minn. 552, 20 N. W. (2d) 489; Employers' Lia. Assur. Corp. v. Lejeune (5 Cir.) 189 F. (2d) 521; Hussey Tie Co. v. Knickerbocker Ins. Co. (8 Cir.) 20 F. (2d) 892; Hilmes v. Marlin Firearms Co. (D. Minn.) 136 F. Supp. 307.

wrote, for a company which it represented, insurance for five individuals, four of whom were connected with the carnival of Bazinet, at the request of Barney. It did not solicit even this business but wrote it at the request of Barney, who, at least up until he first was brought into contact with McGowan Agency, was serving his own end and that of Bazinet. It is true that Barney collected the insurance premiums for the insured and in some other ways serviced the policies, but these services were merely incidental to his own business and not connected, except incidentally, with the business of McGowan Agency. Under the facts in this case, we do not believe that the required minimal contact with the state exists so as to make McGowan Agency amenable to suit in this state. It would be useless to attempt to compare or reconcile the cases on this question. The facts in each case must be measured against the applicable rules, and the test should be whether the foreign defendant is engaged in such business in this state that it is reasonable that it should be subjected to suit here. Care should be exercised not to confuse the nature of the business of McGowan Agency with that of the insurer who assumes the risks on policies as principal. Cases involving that situation are not in point here.

■ Much of Schiavone's argument is based on the assumption that Barney was an "agent" of McGowan Agency. He predicates this mainly on the affidavits of Bazinet and Schiavone, in which they aver that, at the time Barney solicited this insurance, he represented to them that he was the agent of McGowan Agency. As far as Bazinet's affidavit is concerned, we think it is wholly unbelievable, since the record is clear that, at the time that Bazinet says Barney made this representation, Barney knew nothing of the McGowan Agency and the McGowan Agency had never heard of Barney. Even if we accept Schiavone's statement as true, it is insufficient to establish that Barney was an agent of McGowan Agency. No one can become the agent of another without the consent, either express or implied, of the principal.[9] The principal must in some way manifest his consent before the agent has authority to act for him.[10]

■ If authority is to be implied, such implication must be drawn

---

[9] Burchard v. Hull, 71 Minn. 430, 74 N. W. 163.
[10] Restatement, Agency, §§ 7, 15.

from facts for which the principal is responsible.[11]

■ Here, there is a complete absence of any evidence of any conduct of the McGowan Agency from which an agency can be implied. The best that can be said is that it wrote insurance for a company it represented at the request of Barney, who, to begin with at least, represented Bazinet in seeking to secure such insurance. McGowan Agency neither solicited the business nor authorized Barney to solicit it for them. There is no evidence to show that they ever represented to anyone that Barney could act for them, nor is there any evidence in the record from which such consent may be implied. The evidence is wholly insufficient to establish an agency.

Inasmuch as we hold that Barney was not an agent of McGowan Agency at all, it must follow that he was not a managing agent upon whom process might be served under Rule 4.03(b) of Rules of Civil Procedure.

In view of our decision that McGowan Agency was not amenable to suit in this state, it is unnecessary to determine whether service upon the commissioner of insurance or the secretary of state was sufficient to acquire jurisdiction.

Reversed.

---

[11]Riteway Carriers, Inc. v. Schue, 248 Minn. 299, 79 N. W. (2d) 505.